UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:02-cr-00046-JPH-MJD-01 |
| | |
| | ORDER ON MOTION FOR |
| v. | SENTENCE REDUCTION UNDER |
| | 18 U.S.C. § 3582(c)(1)(A) |
| JESSE T. BUCHANAN | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction

in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided

in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:02-cr-00046-JPH-MJD |
| | ) | |
| JESSE T. BUCHANAN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE

Pending before the court are Jesse Buchanan's Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) of the First Step Act of 2018. Dkt. 85, 93. Mr. Buchanan seeks immediate release and the reduction of his sentence to time served.

Mr. Buchanan filed his motion on April 14, 2020. Dkt. 85. Counsel was appointed and filed an amended motion on October 2, 2020. Dkt. 93. The Government has opposed the motion, dkt. 98, and on November 10, 2020, Mr. Buchanan replied, dkt. 99. On April 27, 2021, Mr. Buchanan filed a supplemental notice. Dkt. 103. The merits of the motion for compassionate release are ripe for the Court's consideration.

For the reasons stated below, his motions are **DENIED**.

## I.
### BACKGROUND

In 2002, following a three-day jury trial, Mr. Buchanan was convicted of four counts of trafficking cocaine in violation of 21 U.S.C. § 841(a)(1). Under the 2002 mandatory Sentencing Guidelines, Mr. Buchanan was determined to be a career offender within the meaning of U.S.S.G. § 4B1.1. On April 18, 2003, the Court sentenced Mr. Buchanan to an aggregate term of 400 months'

2

imprisonment based on a guidelines range of 324–405 months (reflecting a final offense level of 36 and a criminal history category of VI). This sentence was to be followed by five years of supervised release. *Id.*

On November 1, 2014, the Guidelines range under which Mr. Buchanan was sentenced was lowered by the United States Sentencing Commission under Amendment 782. Under the retroactive Amendment 782, Mr. Buchanan's Guidelines range was 262–327 months (reflecting a final offense level of 34 and a criminal history category of VI). Dkt. 61 at 2. Mr. Buchanan was appointed an attorney, and the attorney and the Government stipulated to a reduced sentence of 262 months. Dkt. 60. On August 18, 2015, the Court reduced Mr. Buchanan's sentence from 400 months to 262 months. Dkt. 62.

Mr. Buchanan is currently incarcerated at FCI Milan in Milan, Michigan. He has served 212 months in prison, which amounts to about 80% of his sentence. His expected release date (with good-conduct time) is May 15, 2024. Dkt. 98-3 at 1.

On April 14, 2020, Mr. Buchanan filed his Emergency First Step Act Motion based on the COVID-19 pandemic. Dkt. 85. On May 7, 2020, Mr. Buchanan asked the Warden of FCI Milan to approve compassionate release for him based on the risks posed by the COVID-19 outbreak. Dkt. 93-1. The warden denied his request on June 19, 2020, finding that Mr. Buchanan's concerns about contracting COVID-19 were not sufficient to warrant release in light of the measures the BOP has taken to prevent its spread. Dkt. 93-2.

As of May 5, 2021, FCI Milan reported 1 active inmate and 4 active staff cases of COVID-19, and also reported that 3 inmates have died, and that 247 inmates and 79 staff have recovered. *See* www.bop.gov/coronavirus (last visited May 5, 2021). Further, 150 staff members and 217 inmates have been fully vaccinated against COVID-19. *Id.*

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id*. Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)-(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the

reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Buchanan argues that the Court should order his immediate release because (1) the changing legal landscape makes his sentence inappropriate, and (2) his age and medical conditions

place him at high risk for severe illness from COVID-19. He alleges these two factors amount to extraordinary and compelling reasons for release. In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release. The Government opposes the motion, arguing that Mr. Buchanan has not shown that either the change in sentencing guidelines or his health conditions are extraordinary and compelling and that the 18 U.S.C. § 3553(a) factors do not favor release. The Government concedes that Mr. Buchanan has exhausted his administrative remedies. Dkt. 98 at 10.

### A. Extraordinary and Compelling Reasons

Mr. Buchanan does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case.

Mr. Buchanan is a fifty-one-year-old African American male, is pre-diabetic, and has been diagnosed with mild leukopenia. Dkt. 93-3. In Mr. Buchanan's supplementary notice, he also includes medical records showing he is obese, with a mass body index of 32.5. Dkt. 103-1 at 1.

The Centers for Disease Control and Prevention ("CDC") has published guidelines listing preexisting conditions that place individuals of any age at an increased risk of severe illness from COVID-19.[1] The CDC has recognized that having either type 1 or type 2 diabetes can make a person more likely to get severely ill from COVID-19.[2] However, pre-diabetes is not a condition that increases or may increase the risk of severe COVID-19 symptoms. Accordingly, being pre-

---

[1] CDC, *COVID-19 (Coronavirus Disease): People with Certain Medical Conditions* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021).

[2] *Id.*

diabetic is not a health condition that supports Mr. Buchanan's request for compassionate release. *See United States v. Ferrell*, No. 1:16-cr-00259-TWP-MJD-1, 2020 WL 3871210 at *6 (S.D. Ind. July 2, 2020) (concluding same).

Leukopenia is a condition in which one has a low white blood cell count.[3] Chronic low white blood cell count may make an individual vulnerable to infection.[4] Leukopenia is not listed specifically as a CDC risk factor for severe illness from COVID-19, but having a condition that causes "a weakened immune system can make you more likely to get severely ill from COVID-19."[5] *See also* dkt. 93-4 at ¶¶ 8–9 (declaration of Dr. Darella Cooper, testifying that a person with leukopenia who contracts COVID-19 would be less able to fight the virus due to an already weakened immune system). The Government argues that Mr. Buchanan's leukopenia does not increase his risk of severe illness, citing in part this Court's rejection of compassionate release that raised the defendant's mild leukopenia in *United States v. Ellis*, 1:13-cr-145-SEB-TAB-01, 2020 WL 6063840, at *4 (S.D. Ind. Oct. 14, 2020). But that case is distinguishable because Mr. Ellis had seen a hematologist who found he had benign leukopenia that was typical of some African Americans. *Id.* at *3.

The Court need not, however, decide whether Mr. Buchanan's leukopenia may place him at higher risk of both contracting COVID-19 and experiencing more severe symptoms. Mr. Buchanan's updated medical records show that he is obese, and obesity is a confirmed risk

---

[3] Mayo Clinic, *Low white blood cell count*, https://www.mayoclinic.org/symptoms/low-white-blood-cell-count/basics/definition/sym-20050615 (last updated Nov. 24, 2020).

[4] Mayo Clinic, *Low white blood cell count: when to see a doctor*, https://www.mayoclinic.org/symptoms/low-white-blood-cell-count/basics/definition/sym-20050615 (last updated Nov. 24, 2020).

[5] CDC, *Medical Conditions--Immunocompromised state (weakened immune system)*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised-state (last updated Mar. 29, 2021).

factor that increases the risk of severe illness from COVID-19. Being obese may triple the risk of hospitalization due to a COVID-19 infection and is linked to impaired immune function and decreased lung capacity.[6] Thus, the Court assumes without deciding that Mr. Buchanan's health conditions—particularly his obesity—are an extraordinary and compelling reason potentially warranting a sentence reduction.[7]

But even if the Court were to find that Mr. Buchanan has shown extraordinary and compelling reasons based on his health conditions, that conclusion does not end the analysis because the statute also directs the Court to consider the sentencing factors in 18 U.S.C. § 3553(a), to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). The Court has considered the sentencing factors in § 3553(a) and concludes that Mr. Buchanan's motion for sentence reduction must be denied.

### B.     Section 3553(a) Factors

The Court finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Buchanan compassionate release.

The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to

---

[6] CDC, *Obesity and COVID-19*, https://www.cdc.gov/obesity/data/obesity-and-covid-19.html (last visited Apr. 28, 2021).

[7] Because the Court assumes that Mr. Buchanan's health conditions constitute an extraordinary and compelling reason, it need not reach his other argument that the changing legal landscape is itself an extraordinary and compelling reason. The Court will discuss the changed guidelines applicable to Mr. Buchanan's sentence in its discussion of the 3553(a) factors. *See United States v. Hudson*, 967 F.3d 605, 609, 613 (7th Cir. 2020) (concluding that a court may consider new statutory minimum or maximum penalties, current guidelines, and post-sentencing conduct when determining whether the § 3553(a) factors warrant a reduced sentence under § 404 of the First Step Act).

afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Mr. Buchanan's motion.

### 1. Nature and Circumstances of the Offense

First, the Court finds that Mr. Buchanan's crimes were very serious. Mr. Buchanan distributed cocaine to a confidential informant on four occasions. Dkt. 102 at ¶¶ 8–11. When his residence was searched, he possessed 311 grams of cocaine, 157.1 grams of cocaine base, digital scales, plastic baggies consistent with drug-dealing, and a Smith and Wesson Revolver loaded with five rounds of ammunition. *Id.* at ¶ 12. Given Mr. Buchanan's extensive criminal history, his possession of a loaded weapon is particularly disturbing.

### 2. History and Characteristics of the Defendant

As described above, Mr. Buchanan's obesity, and possibly his leukopenia, place him at higher risk of severe illness if he contracts COVID-19. The BOP has implemented a number of measures to prevent the spread of the virus and is actively vaccinating both inmates and staff, but courts have recognized that the nature of prisons presents an outsized risk that "the COVID-19 contagion, once it gains entry, will spread," *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d

301, 304 (S.D.N.Y. 2020). The Court is aware of the risks to Mr. Buchanan and has weighed them in its consideration of the § 3553(a) factors.

Although Mr. Buchanan may face risk from the COVID-19 pandemic, his criminal history is significant. It includes a state conviction for battery by means of a deadly weapon and federal convictions for conspiracy with intent to distribute cocaine and money laundering, and attempting to obtain a prohibited object (heroin) while incarcerated. *Id.* at ¶¶ 32–35. Further, Mr. Buchanan has not been successful while under court supervision following release—Mr. Buchanan was charged with his federal conspiracy charge while on probation for his state battery charge, and he was arrested for the instant charges while on supervised release. *Id.* at ¶¶ 32, 35.

Mr. Buchanan also has a concerning disciplinary record while in prison. His disciplinary records show: one infraction for assault with serious injury, three infractions for assault without serious injury, two infractions for possessing a hazardous tool or a dangerous weapon, and one infraction for disruptive conduct. Dkt. 98-1. Mr. Buchanan also has at least ten infractions relating to possessing drugs or alcohol, or possessing intoxicants. *Id.* In addition, he has several minor infractions relating to mail, phone use, and disobeying orders. *Id.* His most recent infraction occurred on or around May 2020, after he had filed his motion for compassionate release. *Id.* Mr. Buchanan was sanctioned for possessing a hazardous tool, attempting to dispose of an item during a search, and assault without serious injury. *Id.*

Mr. Buchanan has engaged in some classes, dkt. 91-1, and, as a graduate of the 500-hour Challenge Program, he has mentored other inmates. Although the Court commends these efforts, they do not overcome the Court's concerns with Mr. Buchanan's established pattern of breaking rules both in and outside of prison.

### 3. Need for the Sentence Imposed

Mr. Buchanan has served about 80% of his 262-month sentence. He has a little over three years remaining with an expected release date of May 15, 2024. *Id.* Given the seriousness of Mr. Buchanan's crime, his criminal history, and his disciplinary record, releasing him more than three years before the expiration of his sentence would cause the sentence to not reflect the seriousness of the offense.

### 4. The Kinds of Sentences Available

Mr. Buchanan argues that because the legal landscape for federal drug sentencing has changed, his 262-month sentence is out of step with current sentencing practices. He cites the Fair Sentencing Act of 2010 and the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), in support.

In 2010, Congress enacted the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010), to address harsh sentencing disparities between crack cocaine offenses and powder cocaine offenses resulting from irrational and "unjustified race-based differences" in federal sentencing between those types of cases. *Dorsey v. United States*, 567 U.S. 260, 268–69 (2012).

Signed into law on December 21, 2018, the First Step Act makes retroactive the Fair Sentencing Act of 2010's reduction in the disparity between crack and powder cocaine sentences. Section 404(b) of the First Step Act makes sections 2 and 3 of the Fair Sentencing Act of 2010 retroactive to defendants, and it allows district courts to reduce a defendant's sentence for a crack cocaine offense as if the sections of the Fair Sentencing Act of 2010 were in effect at the time the defendant's offense was committed. *See* 132 Stat. at 5222 (First Step Act, § 404).

However, Mr. Buchanan is not eligible for a sentence reduction under the plain language of § 404 of the First Step Act because he was not convicted of an offense involving crack

cocaine. *See United States v. Ridlen*, No. 12-cr-40020-NJR-14, 2020 WL 469664, at *2 (S.D. Ill. Jan. 29, 2020) (holding defendant entitled to no relief under First Step Act for methamphetamine offense because First Step applies only to crack cocaine convictions).

The Supreme Court's decision in *Booker*, 543 U.S. at 245, which rendered the Sentencing Guidelines advisory rather than mandatory, is also inapposite because Mr. Buchanan was resentenced to an agreed-upon sentence post-*Booker*. Dkt. 60.

Mr. Buchanan's 262-month sentence is statutorily valid. Because Mr. Buchanan had a prior conviction for a felony drug offense, his statutory range was and remains, "not more than 30 years." 21 U.S.C. § 841(b)(1)(C). This distinguishes Mr. Buchanan's case from *United States v. Harris*, No. 99-30083, 2021 WL 932006, *2 (C.D. Ill. Mar. 11, 2021), relied upon by Mr. Buchanan in his supplementary notice, in which the defendant would have faced a 240-month statutory maximum rather than a 360-month statutory maximum absent a sentencing enhancement that was later determined to be unconstitutionally broad. The court found that Mr. Harris "has overserved by 18 months what would be his maximum sentence absent the" invalid enhancement, and that factor, combined with Mr. Harris's obesity, age, the COVID-19 pandemic, his lack of violence, and his "very good" disciplinary record, warranted compassionate release. *Id.* at *2–3.

Nevertheless, the Government acknowledges that if the Court were to apply the Guidelines in effect today, Mr. Buchanan's offense level would only be 28 (based on the converted weight for the cocaine and cocaine base at issue), which, with a criminal history category VI, would result in a Guideline range of 140–175 months' imprisonment. Dkt. 98 at 21 (citing U.S.S.G. § 2D1.1(b)(1) and (c)).

The Court recognizes that if Mr. Buchanan was sentenced today, the guidelines range for his sentence would be lower. However, the change in guidelines was not made retroactive;

therefore, declining to reduce Mr. Buchanan's sentence will not create a sentencing disparity. Moreover, unlike the defendant in *Harris*, 2021 WL 932006, Mr. Buchanan's poor disciplinary record, which includes several assaults, does not demonstrate that he has been rehabilitated.

Given its consideration of the applicable § 3553(a) factors, the Court concludes that the risk to Mr. Buchanan from the COVID-19 pandemic is not enough to tip the scale in favor of release. *See United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III.

#### CONCLUSION

For the reasons stated above, Mr. Buchanan's Emergency Motion to Reduce Sentence, dkt. [85], and Amended Motion for Compassionate Release, dkt. [93], are **denied**.

**SO ORDERED.**

Date: 5/5/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel